HY-CROSS HATCHERY, INC.,
Appellant,

v.

Percy J. OSBORNE (Joseph H. Welp, Assignee, Substituted), Appellee.

Patent Appeal No. 6831.

United States Court of Customs
and Patent Appeals.

June 15, 1962.

Dale L. Porter and Rudolph L. Lowell, Des Moines, Iowa, for appellant.

Submitted on record by appellee.

Before WORLEY, Chief Judge, and RICH and SMITH, Judges, and Judge WILLIAM H. KIRKPATRICK.*

\* United States Senior District Judge for the Eastern District of Pennsylvania, designated to participate in place of Judge O'CONNELL, pursuant to provisions of Section 294(d), Title 28 United States Code.

RICH, Judge.

This appeal is from the decision, adhered to on Request for Reconsideration (129 USPQ 232), of the Patent Office Trademark Trial and Appeal Board denying appellant's petition to cancel Registration No. 524,413, on the Principal Register, dated April 25, 1950, for the trademark "HY-CROSS" (the quotation marks being part of the mark) for "Live Poultry for Breeding Purposes and Eggs for Hatching," issued to Percy J. Osborne.

The petition to cancel was filed June 16, 1958, as of which date Reg. No. 524,-413 had been in effect more than five years. A combined affidavit under section 8(a), accepted pursuant to section 8(c), and section 15 of the Lanham Act, 8 U.S.C.A. §§ 1058(a, c), 1065, was filed on March 20, 1956. Under these circumstances, it is necessary for the petitioner to meet at least one of the requirements of section 14(c), permitting the filing of a petition to cancel "at any time." The sole provision of section 14(c) relied on by petitioner is that the registered mark "has been abandoned."

The board held that the mark, "HY-CROSS," had not been abandoned and, after considering an extensive Request for Reconsideration, said:

"The Board remains of the opinion that the record is insufficient to establish that the registered trademark "HY-CROSS" has been abandoned * * *."

Whether the board was correct in so deciding is the sole issue in the case, for in the absence of a showing of abandonment the petitioner has no right under the statute to pursue this cancellation proceeding.

This case was heard and decided below on the pleadings, respondent's registration, and testimony and exhibits introduced into this cancellation on motion from Opposition No. 36611 between the same parties, entitled Hy-Cross Hatchery, Inc. v. Welp, 120 USPQ 323 (TT & A Bd., 1959). In this court petitioner-appellant filed a brief and appeared for oral argument. Respondent-appellee did neither. We have therefore not had the benefit of such light as might have been shed on the issue by an answer to appellant's arguments, which, it seems to us, deal to a large extent with irrelevant questions. We would point out that this is a wholly statutory matter, determined by provisions of the Lanham Act which did not come into effect until July 5, 1947, modifying in many ways aspects of trademark law discussed in earlier cases such as some of those cited and quoted from in appellant's brief. The registration sought to be cancelled enjoys a status, having been in effect more than five years before the petition to cancel was filed, which no registration enjoyed prior to the effective date of said act. Appellant, having elected to bring itself within the provisions of section 14(c) by showing abandonment of the registered mark, cannot prevail unless abandonment has been shown. We turn now to that question.

Appellant predicates abandonment primarily on an assignment of the trademark from the original registrant, Percy J. Osborne, to Joseph H. Welp, dated October 10, recorded November 1, 1955. The primary argument is that this was "no more than a naked assignment," of the "bare mark," which assignment is "invalid" because, to quote appellant, *no business is transferred*" with it. As we understand appellant's contention with respect to the relation of this contention to the issue of abandonment, it is that Osborne's acts in attempting to make an assignment, which assignment is invalid, constituted an abandonment of the mark by him and that whatever rights the assignee, Welp, may have as a result of use subsequent to the assignment are *new rights*, unrelated to the original mark and its registration. A subsidiary argument is that Osborne used "HY-CROSS" on one type of chicken and Welp uses it on a different type of chicken.

The assignment, omitting the "Whereas" clauses, reads:

"BE IT KNOWN that for and in consideration of the sum of One

Hundred Dollars ($100.00) and other good and valuable consideration to him in hand paid, the receipt of which is hereby acknowledged, said Percy J. Osborne by these presents does sell, assign and transfer unto the said Joseph H. Welp the entire right, title and interest in and to the said trade-mark and the registration thereof, No. 524,413, together with that part of the good will of the business connected with the use of and symbolized by the mark."

Section 10 of the Lanham Act, 15 U.S. C.A. § 1060 provides, in part:

"A registered mark or a mark for which application to register has been filed shall be assignable with the goodwill of the business in which the mark is used, *or with that part of the goodwill of the business connected with the use of and symbolized by the mark,* and in any such assignment it shall not be necessary to include the goodwill of the business connected with the use of and symbolized by any other mark used in the business or by the name or style under which the business is conducted: * * *." [Emphasis ours.]

The board found as facts (and we do not find that appellant disputes these findings) that there is nothing in the record to show that Osborne, the assignor, was not using "HY-CROSS" at the time when he assigned that mark, or that he used the mark after the assignment, or that Welp's Hatchery (the business enterprise, a partnership, operated by the assignee) did not use the mark continuously after the assignment. It is on these facts that the board made its finding of no abandonment.

Appellant's argument that there was abandonment is stated thus in its brief:

"The facts relied upon by Petitioner, in support of its position, are the clear admissions made by the Respondent, Welp, that he did not acquire:

"(1) Any part of the business of Osborne,

"(2) Any chickens or eggs from Osborne, or

"(3) Any formula or principle for breeding chickens of the type sold by Osborne as 'Hy-Cross' chickens.

\*    \*    \*    \*    \*    \*

"Welp received only the name 'Hy-Cross'—that was all he wanted—and nothing more whatever was acquired. Welp wasn't even interested in knowing the Osborne 'Hy-Cross' breeding formula. *These facts should prevail over the wording of the assignment.*"

Appellant would apparently have us hold "abandoned" a trademark which has never been out of use because Osborne did not transfer to Welp any "business" or any chickens or eggs or any know-how or trade secrets, notwithstanding there was an assignment, in the precise words of section 10 of the Lanham Act, of "that part the goodwill of the business connected with the use of and symbolized by the mark" which was assigned, as well as the assignment of the mark and the registration thereof. No case has been cited to support that precise proposition. Appellant quotes at length from the opinion of the District Court for the Southern District of New York in a trademark infringement suit, Avon Shoe Co. v. David Crystal Inc., D.C., 171 F. Supp. 293,[1] in which case it admits there was abandonment of the trademark *prior* to an attempted assignment thereof. The quoted portion of the opinion, dictum for the most part, refers to a number of pre-Lanham Act cases on the necessity of assigning some "business" with a trademark in order to have a valid assignment. Nothing quoted tends to show that an invalid assignment is, ipso facto, an abandonment of a mark. One case subsequent to the Lanham Act, cited in the Avon case and further discussed

1. Aff'd. 2 Cir., 279 F.2d 607.

by appellant, is the decision of this court in 1955 in Nettie Rosenstein, Inc. v. Princess Pat, Ltd., 220 F.2d 444, 42 CCPA 806. There was a purported assignment to the applicant of a trademark, discussed in that opinion on a subsidiary issue of laches, by one Rubin, not a party to the opposition. The alleged assignment was dated February 7, 1947, which was prior to the effective date of the Lanham Act. The application assigned was filed under the Act of 1905 and was abandoned by the assignee. But of most significance was the finding by the court that at the time of the alleged assignment Rubin had no going business and had not sold any perfume (the mark was for perfume) for five years prior to the purported assignment. In all of this the court said it could find no basis of a finding for laches and acquiescence on the part of opposer amounting to an estoppel of opposer's right to oppose. The case is a long way from the issue in this case. The part quoted and most relied on by appellant was in turn a quotation from the opinion of the Examiner-in-Chief citing another decision of this court, in 1939, Kelly Liquor Co. v. National Brokerage Co., Inc., 102 F.2d 857, 26 CCPA 1110. In that pre-Lanham Act case the court pointed out (102 F.2d 857, 26 CCPA 1115):

> "By reason of the particular facts in this case, however, we do not hold that the claimed transfer from Kelly Brothers Company to appellant constituted an abandonment of its trade-mark by Kelly Brothers Company. That question is not before us."

We do not find, therefore, any authority in support of the contention that Osborne's assignment, even if it did not effect a valid transfer, necessarily resulted in an abandonment of the mark within the intent of section 14(c).

However, we do not believe that the assignment was invalid. Unlike the cases relied on, Osborne, so far as the record shows, was using the mark at the time he executed the assignment of it. He had a valid registration which he also assigned. With these two legal properties he also assigned, in the very words of the statute, "that part of the goodwill of the business connected with the use of and symbolized by the mark * * *." He was selling chicks which his advertising of record shows were designated as "No. 111 HY-CROSS (Trade Mark) AMERICAN WHITES." As part of his assignment, by assigning the goodwill, he gave up the right to sell "HY-CROSS" chicks. This had been a part of his "business." By the assignment Welp, the assignee, acquired that right. The record shows that he began selling "Hy-Cross Hatching Eggs" and chicks designated as "HY-CROSS 501," "HY-CROSS 610," and "HY-CROSS 656." Thus, what had once been Osborne's business in "HY-CROSS" chicks became Welp's business. We do not see what legal difference it would have made if a crate of eggs had been included in the assignment, or a flock of chickens destined to be eaten.

As for the argument that the transfer should have been held illegal because Osborne sold one kind of chick and Welp sold another another under the mark, whereby the public would be deceived, we think the record does not support this. The *type* of chick appears to have been otherwise indicated than by the trademark, as by the numbers above quoted as well as by name. Osborne, moreover, was not under any obligation to the public not to change the breed of chicks he sold under the mark from time to time.

For the foregoing reasons we believe that appellant has failed to show error in the decision of the Trademark Trial and Appeal Board and it is affirmed.

Affirmed.

MARTIN, J., did not sit or participate because of illness.